UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CARRIE A. WEBB,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | No. CV-13-186-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 23.) Attorney Dana C. Madsen represents plaintiff; Special Assistant United States Attorney Richard A. Morris represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Carrie A. Webb (plaintiff) protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) on January 21, 2010. (Tr. 22, 135, 142, 165.) Plaintiff alleged an onset date of November 9, 2008. (Tr. 135, 142.) Benefits were denied initially and on reconsideration. (Tr. 77, 82, 85, 90.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Moira Adams on April 26, 2011. (Tr. 44-7.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 46-63.) Vocational expert Thomas Polsin also testified. (Tr. 63-69.) The ALJ denied benefits (Tr. 22-33) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

Plaintiff was born in 1959 and was 51 years old at the time of the hearing. (Tr. 31.) She has a sixth grade education. (Tr. 46.) She attended special education classes. (Tr. 46.) She has work experience as a home health aide. (Tr. 47, 64.) She was laid off that job due to her personal life. (Tr. 47-48.) She thinks she cannot work because she is a slow learner and does not move very fast due to arthritis. (Tr. 49.) She cracked her tailbone when she was 10 years old and she still has to be careful about how she sits. (Tr. 50-51.) She had carpal tunnel surgery on both wrists and the pain still comes and goes. (Tr. 50-51.) She has arthritis from her neck to her lower back and her fingers. (Tr. 50.) She also has pain between her hip and her knee and in her left knee. (Tr. 50, 52.) Her left shoulder pops, but she can still use her arm. (Tr. 60.) She is depressed about where she lives. (Tr. 56.) She has medications for her symptoms but she does not take them often. (Tr. 56) She used drugs in the past but quit around 2005. (Tr. 58.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since November 9, 2008, the alleged onset date. (Tr. 24.) At step two, the ALJ found plaintiff has the following severe combination of physical impairments and severe mental impairments: mild thoracic degenerative disc disease, minimal cervical degenerative disc disease, carpal tunnel syndrome (status post bilateral release), borderline intellectual functioning, an adjustment disorder with mixed anxiety and depression, a dependent personality disorder, and a history of poly-substance abuse in full sustained remission. (Tr. 24.)

At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 25.) The ALJ then determined:

> [C]laimant has the physical residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she cannot climb ladders, ropes, and scaffolds, and she can frequently do left hand fingering, handling, and feeling. As to mental residual functional capacity, the claimant can perform up to the lower level of semi-skilled tasks with a specific vocational preparation (SVP) of 3 and have superficial contact with the general public and co-workers.

(Tr. 27). At step four, the ALJ found plaintiff is unable to perform past relevant work. (Tr. 31.) After considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 31.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act at any time from the November 9, 2008, through the date of the decision. (Tr. 32.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) failing to include all of plaintiff's limitations in the RFC finding; and (2) failing to properly consider the opinions of treating and examining sources. (ECF No. 17 at 7-10.) Defendant argues the ALJ reasonably evaluated the medical evidence in assessing plaintiff's residual functional capacity. (ECF No. 23 at 6-15.)

## DISCUSSION

**1.    Dr. Jorgensen**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Jorgensen. (ECF No. 17 at 3, ECF No. 24 at 1-3.) In August 2009, Dr. Jorgensen prepared a psychological evaluation report regarding plaintiff's competency and capacity related to felony drug charges. (Tr. 220-24.) Dr. Jorgensen conducted a clinical interview, document review and administered several psychological tests. (Tr. 220-24.) He diagnosed borderline intellectual functioning, adjustment disorder – chronic with mixed anxiety and depression, and dependent personality disorder. (Tr. 223.) Dr. Jorgensen opined plaintiff was not competent because she had significant deficits in

factual and rational understanding of court. (Tr. 223.) He found she had difficulty in retaining concepts and noted her tendency to be dependent. (Tr. 223.) He concluded her lack of competency is due to her cognitive disorder of borderline intellectual functioning. (Tr. 223-24.) The ALJ gave no weight to Dr. Jorgensen's opinion. (Tr. 30.)

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ cited two reasons for rejecting Dr. Jorgensen's opinion. (Tr. 30.) First, the ALJ gave the opinion no weight because the opinion regarding competency related to plaintiff's ability to proceed with a criminal trial for drug-related charges. (Tr. 30.) However, the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). Although different standards or measures may apply in determining competency for criminal trial than for a disability determination, the opinion of an examining psychologist who conducts psychological testing for a competency finding is not worthless in assessing functioning for disability purposes. Indeed, Dr. Jorgensen's

report contains objective test results and professional analysis of aspects of plaintiff's mental functioning potentially relevant to the disability determination and should be considered by the ALJ. This is not a specific, legitimate reason for rejecting Dr. Jorgensen's opinion.

Second, the ALJ rejected Dr. Jorgensen's findings and conclusions because "the psychologist's opinion [is] inconsistent with other mental exams, including a psychiatric evaluation conducted just a couple of months earlier." (Tr. 30.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The example of inconsistency cited by the ALJ is the opinion of Dr. Johnson, an examining psychiatrist who completed a forensic evaluation in June 2009. (Tr. 300-06.) Dr. Johnson conducted no objective testing and based his findings on a clinical interview and review of police and witness reports, her criminal history and Eastern State Hospital master file.[1] (Tr. 301.) He opined plaintiff did not suffer from a mental disease or defect and concluded plaintiff was competent to stand trial. (Tr. 300, 304.) The ALJ also cited test results by Dr. Mabee, whose opinion was also ultimately rejected by the ALJ.[2] (28, 344-51) Other mental health evidence mentioned by the ALJ includes a counseling notation that plaintiff was "mildly depressed" and her symptoms of her sadness and hopelessness were "minor." (Tr. 28, 334, 338.) However, Dr. Jorgensen found plaintiff not competent primarily due to borderline intellectual functioning, not anxiety or depression. (Tr. 223-24.) The evidence does not reasonably establish that Dr. Jorgensen's findings are significantly inconsistent with other mental exams as asserted by the ALJ. The mental health evidence cited by the ALJ is not reasonably interpreted as substantial evidence inconsistent with Dr. Jorgensen's findings. As a result, the ALJ erred.

**2.    Dr. Mabee**

Plaintiff argues the ALJ improperly rejected the findings of Dr. Mabee, an examining psychologist. (ECF No. 17 at 3, ECF No. 24 at 3-4.) Dr. Mabee examined plaintiff and completed a DSHS Psychological/Psychiatric Evaluation in November 2010. (Tr. 344-48.) He

---

[1] Dr. Johnson noted plaintiff's criminal history report showed no prior arrests, consistent with her report of no criminal history. (Tr. 303.) Further, although the Eastern State Hospital "master file" is not part of the record, Dr. Johnson noted plaintiff denied being admitted to a psychiatric hospital or any prior psychiatric treatment with psychotropic agents. (Tr. 302.) Thus, the record suggests Dr. Johnson's findings are based primarily on a clinical interview and review of the incident reports pertaining to the felony charges.

[2] See discussion, *infra*.


diagnosed dysthymic disorder, anxiety disorder, schizotypal personality disorder with avoidant features and rule out mental retardation. (Tr. 345.) Dr. Mabee checked boxes indicating plaintiff has two moderate and six marked limitations in cognitive and social functioning. (Tr. 346.) Dr. Mabee also opined, "Ms. Webb is capable of understanding and carrying out simple and repetitive instructions. She can only concentrate for short periods of time. She would work best in positions that have minimal interactions with others. She will work slowly on tasks and should not be expected to meet deadlines." (Tr. 346.) The ALJ rejected Dr. Mabee's findings to the extent they exceed the RFC. (Tr. 30.)

The first reason given by the ALJ for discounting Dr. Mabee's findings is that such limitations are inconsistent with Dr. Mabee's contemporaneous mental evaluation. (Tr. 30.) A medical opinion may be rejected by the ALJ if it contains inconsistencies. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). The ALJ concluded Dr. Mabee's finding of "slowed" concentration is inconsistent with plaintiff's ability to calculate serial 7s with one error and serial 3s without error. (Tr. 30, 346, 350.) However, this reasoning is not supported by substantial evidence. There is no notation or finding regarding how long it took plaintiff to complete serial 7s and serial 3s. (Tr. 350.) In fact, neither the ALJ nor the nonexamining psychologists relied on by the ALJ could reasonably assess the speed at which plaintiff completed the task, nor is there any basis in the record to challenge Dr. Mabee's finding that plaintiff completes tasks slowly. Furthermore, the "work slowly" task addressed by the ALJ is a limitation rated only "moderate" by Dr. Mabee. The ALJ failed to address the six "extreme limitations" (ECF No. 23 at 10) assessed by Dr. Mabee or show any significant inconsistency between Dr. Mabee's conclusions and his findings on exam or testing. The ALJ therefore failed to properly justify the conclusion that Dr. Mabee's report is internally inconsistent.

The ALJ also asserted Dr. Mabee "likely relied on the claimant's self-report." (Tr. 30.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604. However, Dr. Mabee conducted a mental status exam, review of medical and mental health history, and an MMPI-2-FR exam which support his findings in addition to the clinical interview. (Tr. 344, 347, 349-51.) The assertion that Dr. Mabee "likely" relied on plaintiff's self-report is speculation by the ALJ and is not based on substantial evidence. Although the ALJ noted Dr. Mabee's finding that plaintiff's

F-r score indicates over reporting of symptoms, this alone is not a reasonable basis to reject Dr. Mabee's entire report. (Tr. 30-31, 347.) Rather, the finding suggests Dr. Mabee took into account plaintiff's over reporting of symptoms in making his conclusions. The ALJ's conclusion that Dr. Mabee improperly relied on plaintiff's unreliable self-report is not supported by substantial evidence.

Another reason mentioned by the ALJ for rejecting Dr. Mabee's report is that at the time of the evaluation, plaintiff had not been engaging in any form of mental health treatment. (Tr. 31.) Defendant points out the absence of medical treatment during the relevant time period can undermine a claimant's testimony. (ECF No. 23 at 12, *citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989). This argument fails for two reasons. First, plaintiff's lack of mental health treatment has little to do with Dr. Mabee's findings. The ALJ did not discuss or point to any evidence suggesting plaintiff improved with treatment. Although in some cases lack of treatment may reflect on a plaintiff's credibility, it is unclear how a lack of medical treatment would reflect on the reliability or appropriate weighting of an examining medical opinion. Thus, plaintiff's lack of mental health treatment does not affect the validity or credibility of Dr. Mabee's findings. Second, a claimant's failure to seek treatment for a mental disorder is not a substantial basis on which to conclude a psychological assessment is inaccurate. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). It was therefore not appropriate for the ALJ to consider plaintiff's limited mental health treatment in rejecting Dr. Mabee's opinion.

Lastly, the ALJ rejected Dr. Mabee's assessment of a GAF score of 49.[3] Defendant suggests this is a legally sufficient reason to reject Dr. Mabee's opinion. (ECF No. 23 at 13.) Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Moreover, the GAF scale is no longer included in the

---

[3] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

DSM–V.[4] As a result, the GAF score is not particularly relevant to the disability determination and the ALJ's rejection of the GAF score is not equivalent to a proper rejection of Dr. Mabee's opinion.

Defendant also suggests the ALJ properly rejected Dr. Mabee's check-box functional assessment. (ECF No. 23 at 12.) Defendant is correct that individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Defendant points out the ALJ "noted" twice that Dr. Mabee's functional assessment was given via check boxes. (ECF No. 23 at 12.) However, the court is constrained to review only those reasons asserted by the ALJ. *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). The ALJ did not identify the check-box portion of the opinion as a reason for rejecting it; rather, the ALJ noted Dr. Mabee "checked boxes indicating the claimant has cognitive and social limitations that exceed the residual functional capacity found here," (Tr. 30) and "the undersigned gives no weight to the degrees of severity implicated in the check the box portion of the evaluation." (Tr. 31.) While all reasons discussed by the ALJ constitute "grounds invoked by the agency," *SEC*, 332 U.S. at 196, or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), in this case the ALJ did not discuss the check-box portion of Dr. Mabee's opinion as a "reason" for rejecting it. Even if the ALJ's language could reasonably be construed to reject a portion of Dr. Mabee's assessment for that reason (and the court does not so conclude), the ALJ still did not reject Dr. Mabee's narrative functional assessment for any specific, legitimate reason supported by substantial evidence.

Based on the foregoing, the ALJ improperly rejected the opinions of Dr. Jorgensen and Dr. Mabee by failing cite specific, legitimate reasons supported by substantial evidence. As a result, the matter must be remanded for reconsideration of the opinions and additional findings.

Furthermore, it is noted that the ALJ rejected all psychological opinion evidence in the record supported by objective testing, yet gave "great weight" to findings of Dr. Bailey and Dr. Kester, the reviewing psychologists. (Tr. 26, 30-31.) However, Dr. Bailey's findings are supported only by reference to Dr. Jorgensen's findings (rejected by the ALJ) and a

---

[4] "It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5TH Ed. at 16.

psychological assessment by Pam Brown, MA (not discussed by the ALJ). (Tr. 259-68, 294, 298.) Dr. Kester's findings additionally reference a medical record involving complaints of migraines, rash, nasal congestion and pain in the lower leg. (Tr. 327, 331.) The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). An ALJ may rely upon the opinion of a non-examining medical advisor as long as other evidence in the record supports those findings. *Tonapetyan*, 242 F.3d at 1149; *Magallenes*, 881 F.2d at 752. The ALJ failed to identify substantial evidence in addition to the findings of Dr. Bailey and Dr. Kester which justify rejection of the opinions of Dr. Mabee and Dr. Jorgensen. On remand, the ALJ must reconsider the opinion evidence and should further develop the record by consultative examination or the testimony of a psychological expert.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should reconsider the psychological opinion evidence and, if appropriate, develop the record by obtaining a psychological evaluation or the testimony of a psychological expert.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(ECF No. 23)** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED April 16, 2014

                           *s/ Fred Van Sickle*
                             Fred Van Sickle
                  Senior United States District Judge